1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| 7  In Re: | |
| 8  LLS AMERICA, LLC, | NO:  12-CV-668-RMP |
| 9                          Debtor, | Bankr. Case No. 09-06194-FPC11 |
| 10  BRUCE P. KRIEGMAN, solely in his capacity as court-appointed Chapter 11 | Adv. Proc. No. 11-80125-FPC |
| 11  Trustee for LLS America, LLC, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| 12                          Plaintiff, | |
| 13  v. | |
| 14  LAZY M, LLC, et al., | |
| 15                          Defendants. | |

16

17         This consolidated action was tried before the Court commencing on

18   January 20, 2015.  Plaintiff, Bruce P. Kriegman, the court-appointed Chapter 11

19   Trustee for LLS America, LLC ("Trustee"), was represented by Shelley N. Ripley

20   and Daniel J. Gibbons of Witherspoon Kelley.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

All Defendants are pro se litigants. Defendants Anthony Cilwa, Beverly Gyenizse, and David Perry participated telephonically. Defendant Anthony Cilwa filed for bankruptcy and confirmed on the record that he was not seeking to have the bankruptcy stay set aside or to have his counterclaims considered at this time. The Trustee indicated that he would not pursue his claim against deceased Defendant Victoria Cilwa, whom the Trustee assumed would have filed for bankruptcy with her husband if she had survived. No other Defendants participated at trial. The record reflects that Defendant Mark Trikowsky also filed for bankruptcy.

The Court heard the testimony of the parties' witnesses and, having reviewed the admitted exhibits and being fully informed, makes the following findings of fact and conclusions of law:

## PREVIOUS RULINGS

### 1.    Ponzi Scheme and Insolvency

On July 1, 2013, the Bankruptcy Court issued its Report and Recommendation Re Plaintiff's Motion for Partial Summary Judgment on Common Issues ("Report and Recommendation") recommending that the District Court grant the Trustee's Amended Motion for Partial Summary Judgment on two "Common Issues":  (1) Debtor operated a Ponzi scheme; and (2) Debtor was insolvent at the time of its transfers to Defendants. On August 19, 2013, this

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 2

Court adopted the Bankruptcy Court's Report and Recommendation and entered an order granting the Trustee's Amended Motion for Partial Summary Judgment on the Common Issues ("Order Adopting Report and Recommendation"). *See* 2:11-cv-00357-RMP, ECF No. 92. Therefore, this Court has determined that Debtor operated a Ponzi scheme and was insolvent at the time of each of the transfers to Defendants.

All of the findings and conclusions set forth in the Report and Recommendation and the Order Adopting Report and Recommendation are incorporated by this reference and are the law of this case.

### 2.    Omnibus Hearing for the Testimony of Charles B. Hall

On January 31, 2014, this Court entered its Order Granting Plaintiff's Motion for Omnibus Hearing. ECF No. 20. Pursuant to that Order, the court-appointed examiner, Charles B. Hall, testified at an Omnibus Hearing in open court commencing on February 25, 2014. His testimony consists of written direct examination testimony that was filed on or about February 17, 2014, and the oral testimony that he gave at the Omnibus Hearing. Mr. Hall was cross examined by several defense attorneys and by some pro se defendants. Mr. Hall's testimony at the Omnibus Hearing is part of the record in this adversary action.

## FINDINGS OF FACT

1.      Debtor is the Little Loan Shoppe group of companies, which was formed originally in 1997.  PO-1 at 11.

2.      Debtor operated a Ponzi scheme, whereby investors' loans sometimes were used to pay other investors' promised returns on investments.  PO-1 at 16.

3.      Over the course of its existence, Debtor acquired approximately $135.4 million from investments made by individual lenders, usually documented by promissory notes offering interest returns in the range of 40% to 60% per annum.  PO-1 at 7 n.2, 15.

4.      Debtor accumulated payday loan bad debts of approximately $29 million, which were written off in 2009.  PO-1 at 41.

5.      Debtor was never profitable at any time during its existence and at no time did it generate sufficient profits to pay the amounts due the lenders.  PO-1 at 16, 53.

6.      Defendants are lenders who received payments from Debtor.

7.      Defendants filed proofs of claim and/or the relevant conduct largely occurred in Spokane, Washington.

8.      Some of the promissory notes were executed in Spokane.  *See e.g.*, P-21 at 5 (Gyenizse); P-31 at 3 (Haer); P-52 at 1 (Ponton); P-61 at 3 (Pacifica); P-71 at 3 (Perry); P-81 at 16 (Armstrong); P-92 at 8 (Lazy M).

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 4

9.    Debtor gave lenders, including Defendants, post-dated checks to cover interest payments, but some checks had insufficient funds to cover payment of the checks or no longer had an active account with the drawee bank when the date for payment arrived.  *See, e.g.*, P-76 at 32 (Perry); P-25 (Gyenizse); P-35 (Haer); P-66 at 11 (Pacifica); P-85 at 1 (Armstrong).

10.    Debtor voided approximately 29,000 of the post-dated checks that it had issued to lenders.  PO-1 at 26.

11.    Some Defendants received promissory notes that were rolled into or renewed in other promissory notes.  *See, e.g.*, P-21 at 5 (Gyenizse); P-31 at 3 (Haer); P-61 at 3 (Pacifica); P-71 at 3 (Perry); P-81 at 16 (Armstrong).

12.    All of the transfers that the Trustee seeks to avoid were made within the period of September 1997 to July 21, 2009.

13.    Indicia and characteristics of the Ponzi scheme present in this case include:

a.    Proceeds received from new investors masked as profits from running a payday loan business; PO-1 at 16, 22;

b.    Promise of a high rate of return, usually between 40% to as much as 60%, on the invested funds; PO-1 at 19;

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5

      c.     Debtor paid commissions to third parties who solicited new lenders, typically 10% of the amount received from the new lender; PO-1 at 20-21;

      d.     Debtor solicited funds as loans evidenced by a promissory note but demonstrated a pattern of "rolling over" the promissory notes when due into new notes instead of paying off the obligation; PO-1 at 26;

      e.     Debtor, throughout its history, made false and misleading statements to current and potential lenders; PO-1 at 53-54; and,

      f.     Debtor was insolvent from its inception to the filing of its bankruptcy; PO-1 at 67.

14.    The court-appointed examiner, Charles B. Hall, by way of education, experience, and vocation, is qualified to analyze and review the legitimacy of an enterprise's operation and to detect a fraud based on Ponzi scheme operations.

15.    Mr. Hall's testimony is credible.

16.    Curtis Frye's testimony, which pertained to Debtor's record keeping and the accounting of investment, payments, and consulting fees/commissions to Defendants, is credible.

17.    Defendants received interest and principal payments from Debtor.

18.    Defendants are "net winners."

19.    Defendants were promised high rates of return from Debtor.

1      20.    Specific findings of fact for particular Defendants are as follows:

2      **a.    David Perry**

3      Defendant Perry disputes the Trustee's accounting of transfers that he

4 received, claiming that he "never retained any of those funds to [his] own account

5 or to the benefit of anyone in [his] family, as all such funds went to third parties."

6 ECF No. 127 at 2.  The funds that were received from Debtor were used to repay

7 amounts that Defendant Perry had borrowed in order to invest in Debtor, to pay

8 interest, and to satisfy Defendant Perry's legal fees.  *See* P-77 at 3.  According to

9 the Trustee's summary of transactions between Debtor and Defendants Perry and

10 Spare,[1] these Defendants received $220,000 from Debtor.  P-73 at 2.

11     Defendant Perry underestimates the significance of receiving transfers from

12 Debtor, even if those transfers simply were passed along to satisfy Defendant

13 Perry's financial obligations.  If a transfer is avoided, a bankruptcy trustee may

14 recover the value of the transfer from "the initial transferee of such transfer or the

15 entity for whose benefit such transfer was made . . . ."  11 U.S.C. § 550(a).  The

16 Ninth Circuit has adopted the "dominion" test for determining whether a person or

17 an entity is an initial transferee from whom recovery can be had or instead a

18 "mere conduit."  *In re Incomnet, Inc.*, 463 F.3d 1064, 1071 (9th Cir. 2006).

19 According to the dominion test, "a transferee is one who . . . has 'dominion over

20
_____

[1] Evidence regarding Defendant Spare is discussed separately below.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

the money or other asset, the right to put the money to one's own purposes.'" *Id.* at 1070 (quoting *In re Cohen*, 300 F.3d 1097, 1102 (9th Cir. 2002)) (internal quotation marks omitted).  The inquiry under the dominion test "focuses on whether an entity had legal authority over the money and the right to use the money however it wished." *Id.*  A defendant asserting this defense bears the burden of proving that it did not have dominion.  *In re Maui Indus. Loan & Fin. Co.*, 477 B.R. 134, 145 (Bankr. D. Haw. 2012).

Here, although Defendant Perry claims that "all of said funds have been paid out[,]" P-77 at 3, he recognizes that the transfers were paid to reduce his financial obligations.  In other words, even though Defendant Perry did not retain the funds that he received from Debtor, he exercised dominion over the funds by using them to satisfy other debts.  Thus, Defendant Perry is an "initial transferee" for purposes of the Bankruptcy Code, and the Trustee may seek to recover fraudulent transfers from him.

At trial, Defendant Perry also challenged whether the Trustee had provided sufficient evidence to establish that he had received a series of $15,000 wire transfers, totaling $150,000.  Wire transfer confirmations indicate that the funds were transferred to the Richard M. Layne Trust.  P-74 at 35-44.  Mr. Layne was Defendant Perry's attorney.  According to Mr. Layne's document labeled "Dave Perry Trust Ledger," the majority of the disputed transfers were used to pay

attorney fees or were transferred further to other accounts.  *See* P-76 at 36.  For example, Defendant Perry testified that two transfers were made to a European account to repay a loan that he had obtained from a person whom Defendant Perry declined to identify at trial.  The $15,000 transfers also are reflected in a document labeled "David V. Perry's Investment Summary," which was attached to the proof of claim that Mr. Layne filed on Defendant Perry's behalf.  P-71 at 1, 12.[2]

Similar to Defendant Perry's general objection that he did not retain any of the transfers from Debtor, Defendant Perry's argument that he did not receive the $15,000 transfers is unavailing.  As noted above, Section 550(a) permits a trustee to recover an avoided transfer from "the entity for whose benefit such transfer was made . . . ."  11 U.S.C. § 550(a)(1).  Although the series of $15,000 transfers was made to Mr. Layne, the evidence establishes that Defendant Perry's attorney held the funds in trust for Defendant Perry and used the money to reduce Defendant Perry's obligations.  Thus, the transfers were made for Defendant Perry's benefit and the Trustee is entitled to seek to recover those transfers from Defendant Perry.

Defendant Perry also asserts that he acted under an objective standard of good faith in his dealings with Debtor, discussing the circumstances of his investments.  Defendant Perry was in his seventies and living in a foreign country when he learned of the opportunity to invest in Debtor from a close friend, Alex

---

[2] The investment summary includes an additional $15,000 transfer dated July 21, 2009.  P-71 at 12.  However, the Trustee explained at trial that he lacked evidence of the payment.

Mirrow.   Defendant Perry never received financial statements from Debtor or visited Debtor's place of business but he testified that he trusted Doris Nelson, Debtor's proprietor, whom he understood to have operated the business for more than nine years without missing an interest payment to investors.   Furthermore, Defendant Perry knew that Wells Fargo provided services for Debtor, strengthening his impression that Debtor operated a legitimate business.

Although Debtor's promised interest rates were high, Defendant Perry reasoned that such a lucrative deal was possible because of the booming market in the United States.   Defendant Perry also compared the annual interest rate that Debtor charged its payday loan customers to bank overdraft fees, which Defendant Perry claims would be much higher than the interest on payday loans if considered as an annual interest rate.   Additionally, Defendant Perry inferred that by operating a brick-and-mortar business in Washington State, Debtor was in compliance with this jurisdiction's rigorous financial services requirements. Defendant Perry thought that Debtor was a growing, thriving business that was in need of additional money.

However, Defendant Perry also was aware of some of Debtor's suspicious practices.   In addition to the high rates of promised returns, Defendant Perry's repeated requests for financial statements were unfulfilled, *see* P-76 at 30. Defendant Perry also received promissory notes that Debtor later rolled into new

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10

notes.  *See* P-70 at 2.   Moreover, like other investors in Debtor's scheme, Defendant Perry received checks from Debtor that were not honored.  *See* P-76 at 12.

The Court finds that Defendant Perry's testimony was credible and that he has established by the preponderance of the evidence that he acted under an objective standard of good faith.   Although Defendant Perry never reviewed financial statements from Debtor or visited Debtor's place of business, the Court finds that it was reasonable under Defendant Perry's circumstances for him to rely on the reports of his trusted friend and indications that Debtor was a legitimate business.  Accordingly, the Court finds that Defendant Perry did not have notice of sufficient attributes of Debtor's business to understand that it was fraudulent.[3]

### b.    Othelia Spare

The Trustee seeks to recover the same amount of transfers jointly from both Defendant Perry and his daughter, Defendant Spare.   At trial, however, the Trustee indicated that the only evidence that Defendant Spare had received any transfers from Debtor is that her name appears on a promissory note that also lists her father as a lender.  *See* P-71 at 4.  There is no evidence that Debtor actually made any transfers to or for the benefit of Defendant Spare.

---

[3] Defendant Perry disputes that he properly was served.  ECF No. 127 at 55.  However, as the Court ruled in a prior order, Defendant Perry waived any challenge to service of process.  ECF No. 82 at 4-5.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11

The Court finds that the Trustee has failed to show by the preponderance of the evidence that Defendant Spare received any transfers from Debtor.

### c.    Beverly and Frank Gyenizse

Ms. Gyenizse did not dispute the Trustee's evidence of the amount of money that she and her husband invested in Debtor or the accounting of transfers that the couple received.  However, Ms. Gyenizse asserted at trial that she and her husband had invested in good faith.

Before investing with Debtor, the Gyenizses traveled to Spokane, where they met with Ms. Nelson and toured Debtor's place of business.  ECF No. 130 at 1.  They were shown Debtor's client database and observed Debtor's loan representatives speaking on the phone with clients.  ECF No. 130 at 1.  Ms. Gyenizse testified that plaques on Ms. Nelson's walls and desk indicated to her that Ms. Nelson was respected by the business community.  ECF No. 130 at 1.  The Gyenizses were told that Debtor had been in business for nine years and that Ms. Nelson owned the building from which the business operated.

However, the Gyenizses never received a financial statement from Debtor and, similar to other contributors to this Ponzi scheme, they were given promissory notes at suspiciously high rates of 40% and 50%, *see* P-21 at 4, 6.  The Gyenizses also were aware that Debtor's checks to investors sometimes would not

be honored, although the evidence at trial indicated that only one check to the Gyenizses could not be cashed. *See* P-25.

The Court finds that Ms. Gyenizse's testimony was credible and that the preponderance of the evidence shows that the Gyenizses met the objective standard of good faith. Although they knew of some of Debtor's suspicious practices, their concerns reasonably were minimized by the confirmations that the Gyenizses personally received from Debtor that the business was sound.

### d.    Remaining Defendants

The remaining defendants, who neither filed bankruptcy nor participated at trial, are Lazy M LLC, Pacifica Ventures Inc., Shelly Armstrong, David Armstrong, Daljit Haer, Ronald Ponton, and Tomika Ponton. These Defendants offered no evidence or argument in support of the defense of good faith. Moreover, the Court's review of Plaintiff's evidence against these Defendants does not support by a preponderance of the evidence that these Defendants met the objective standard of good faith.

21.    The following summarizes the evidence of investments made by Frank and Beverly Gyenizse and the payments that they received:

| | |
|---|---|
| Total Payments (Money Out): | $145,943.00 CAD |
| Total Investments (Money In): | $101,990.00 CAD |
| MIMO (Difference between Money In and Money Out): | $43,953.00 CAD |

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 13

22.    The following summarizes the evidence of investments made by Daljit Haer and the payments that he received:

Total Payments (Money Out):        $117,616.50 CAD
Total Investments (Money In):      $50,000.00 CAD
MIMO (Difference between
Money In and Money Out):           $67,616.50 CAD

23.    The following summarizes the evidence of investments made by Ronald Ponton, Sr. and Tomika Ponton and the payments that they received:

Total Payments (Money Out):        $117,411.00 USD
Total Investments (Money In):      $109,990.00 USD
MIMO (Difference between
Money In and Money Out):           $7,421.00 USD

24.    The following summarizes the evidence of investments made by Pacifica Ventures, Inc. and the payments that it received:

Total Payments (Money Out):        $85,447.00 USD
Total Investments (Money In):      $30,000.00 USD
MIMO (Difference between
Money In and Money Out):           $55,447.00 USD

25.    The following summarizes the evidence of investments made by David Perry and the payments that he received:

Total Payments (Money Out):        $220,000.00 USD
Total Investments (Money In):      $149,975.00 USD
MIMO (Difference between
Money In and Money Out):           $70,025.00 USD

26.    The following summarizes the evidence of investments made by David and Shelly Armstrong and the payments that they received, based on the

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 14

Court's acceptance of the Bankruptcy Court's report and recommendation granting the Trustee's Motion for Partial Summary Judgment, 2:12-cv-00004-RMP, ECF No. 62:

| | |
|---|---|
| Total Payments (Money Out): | $495,442.56 CAD |
| Total Investments (Money In): | $295,000.00 CAD |
| MIMO (Difference between | |
| Money In and Money Out): | $200,442.56 CAD |

27.    The following summarizes the evidence of investments made by Lazy M, LLC and the payments that it received:

| | |
|---|---|
| Payments | $550,707.35 USD |
| Less Building Acquisition | $150,000.00 USD |
| Total Payments (Money Out) | $400,707.35 USD |
| Total Investments (Money In) | $  71,000.00 USD |
| MIMO (Difference between Money | |
| In and Money Out) | $329,707.35 USD |

28.    Total transfers to Defendants are as follows:

- Frank and Beverly Gyenizse for $145,943.00 CAD;

- Daljit Haer for $117,616.50 CAD;

- Ronald Ponton, Sr. and Tomika Ponton for $117,411.00 USD;

- Pacifica Ventures, Inc. for $85,447.00 USD;

- David Perry for $220,000.00 USD;

- Mark and Shelly Armstrong for $495,442.56 CAD; and

- Lazy M, LLC for $400,707.35 USD.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 15

29.   All transfers to Defendants were made with actual fraudulent intent and in furtherance of a Ponzi scheme.

30.   Defendants filed proofs of claim as follows:

- Anthony and Victoria Cilwa - Claim No. 77;

- Frank and Beverly Gyenizse - Claim No. 140;

- Daljit Haer - Claim No. 187;

- Ronald Ponton, Sr. and Tomika Ponton - Claim No. 567;

- Pacifica Ventures, Inc. - Claim No. 456;

- David Perry - Claim No. 88;

- Mark and Shelly Armstrong - Claim Nos. 223, 224, 226, 227 & 229; and

- Lazy M, LLC - Claim No. 482 & 622.

## CONCLUSIONS OF LAW

1.   This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(d).

2.   This Court has jurisdiction over Defendants.

3.   This action was timely commenced.

4.   Washington state law governing fraudulent transfers applies.

5.   Transfers made in furtherance of a Ponzi scheme constitute actual fraud under the Bankruptcy Code and Washington's version of the Uniform

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 16

Fraudulent Transfer Act (UFTA).  *See* Bankr. Adv. Doc. 11-80299, ECF No. 378 at 21-25.  "Where causes of action are brought under the UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers . . . ."  *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008).

6.    Defendants have no basis to dispute that they are obligated to pay the Trustee amounts that they received from Debtor that exceed their investment in the scheme.  Some Defendants assert, however, that they are entitled to retain the amount of principal that they invested because they acted in good faith.

7.    A transferee of a fraudulent transfer may keep funds that it took for reasonably equivalent value and in good faith.  *See* 11 U.S.C. § 548(c); RCW 19.40.081(a).  As recipients of transfers that constitute actual fraud, the burden of proof in establishing the affirmative defense of good faith is on Defendants. *In re Agric. Research and Tech. Grp., Inc.*, 916 F.2d 528, 535 (9th Cir. 1990); 5 *Collier on Bankruptcy* ¶ 548.09[2][c] at 548-98.2 (16th ed. 2011).

8.    Although "good faith" is not defined precisely in case law, at least one court has noted that the absence of good faith is shown by a transferee who knows that a debtor is operating a Ponzi scheme. *See In re Agric. Research*, 916 F.2d at 535 (citing *In re Indep. Clearing House*, 77 B.R. 843, 861 (D. Utah 1987)).  The

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 17

Ninth Circuit has quoted favorably an explanation in an early case that a transferee's "knowledge or actual notice of circumstances sufficient to put him, as a prudent man, upon inquiry as to whether his brother intended to delay or defraud his creditors . . . should be deemed to have notice . . . as would invalidate the sale as to him." *Id.* (quoting *Shauer v. Alterton*, 151 U.S. 607, 621 (1894)).

9.    Thus, courts measure good faith by an objective standard, looking to what a transferee "'knew or should have known' in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint." *Id.* at 536.

10.    The goal of avoiding a debtor's fraudulent transactions is not to punish those who received funds from the debtor.  Instead, fraudulent transfers are avoided to benefit a debtor's creditors by bringing property back into the debtor's estate for distribution to creditors.  *See* 5 *Collier on Bankruptcy* ¶ 548.01[1][a] at 548-11.

11.    Under the Bankruptcy Code, Washington's UFTA, as well as relevant case law, the Court does not contemplate a recipient's intent when deciding whether to avoid fraudulent transfers.  *Id.* ¶ 548.04[2] at 548-63; *Thompson v. Hanson*, 168 Wn.2d 738, 749 (2010).  Accordingly, a transfer that constitutes actual fraud is avoided in its entirety unless the transferee establishes that a reasonable person in the transferee's position would not and should not

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 18

have known of the fraud, not simply whether he or she *actually* acted in good faith.

12.    At least one unsecured creditor existed who triggered the strong arm power of 11 U.S.C. § 544(b)(1) because the creditor did not and should not reasonably have discovered the fraudulent nature of Debtor's Ponzi scheme transfers less than one year before the bankruptcy petition was filed.

13.    Under the statutes relating to fraudulent transfers, 11 U.S.C. § 548 and RCW 19.40, *et seq.*, payments received from Debtor are recoverable from each Defendant by the Trustee, subject to the defense of good faith pursuant to 11 U.S.C. § 548(c) and RCW 19.40.081(a).

14.    Transfers made by Debtor in furtherance of its Ponzi scheme are transfers made with intent to hinder, delay and/or defraud creditors under both state law, RCW Ch. 19.40, and federal law, 11 U.S.C. § 548(a)(1).

15.    All transfers to Defendants were made with actual fraudulent intent and in furtherance of a Ponzi scheme.

16.    As discussed above, Defendants Lazy M LLC, Pacifica Ventures Inc., Shelly Armstrong, David Armstrong, Daljit Haer, Ronald Ponton, and Tomika Ponton failed to meet their burden to establish good faith and, thus, these Defendants are required to return the entire amount of the transfers that they received, including principal, interest, and commissions.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 19

17.    The Trustee claims that $30,000 of the transfers to Defendant Perry alternatively may be avoided as preferences.  The Bankruptcy Code permits a trustee to recover a transfer "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent;" that was "(4) made . . . on or within 90 days before the date of the filing of the [bankruptcy] petition;" and (5) that would allow the creditor to receive more than it would have received if the transfer had not been made and if the creditor instead had received payment through a proceeding under Chapter 7 of the Code.  *See* 11 U.S.C. § 547(b).

18.    The Trustee has established all of the elements needed to prove that Defendant Perry received $30,000 in preferences, which the Trustee is entitled to recover.  This amount comprises two of the series of $15,000 transfers which, as explained above, were for the benefit of Defendant Perry, a creditor.  The transfers were on account of the antecedent debt resulting from Defendant Perry's investments in Debtor.  The Court already has determined that Debtor was insolvent at the time of its transfers to all defendants.  Additionally, the transfers were received on April 24, 2009, and May 1, 2009, fewer than 90 days before the bankruptcy petition was filed on July 21, 2009.  *See* P-74 at 43, 44.  Finally, as an unsecured creditor with a claim against a debtor that ran an extensive Ponzi scheme, Defendant Perry would not have been entitled to receive a $30,000

payment. *See In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421 (9th Cir. 1985) ("[A]s long as the distribution in bankruptcy is less than one-hundred percent, *any* payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.").

19.    Unlike fraudulent conveyances, preferences that are avoidable pursuant to Section 547 may not be retained by initial transferees based on the defense of good faith. *See* 11 U.S.C. § 548(c) (excluding from the good faith defense transfers that are "voidable under section 544, 545, or 547 of this title"). Thus, even though Defendant Perry has established the good faith defense as to payments from Debtor that are avoidable as fraudulent transfers, the $30,000 preference amount that Defendant Perry must pay may not be reduced by the amount of his investment in Debtor. The Court notes, however, that whether the $30,000 in transfers are considered to be fraudulent conveyances or preferences does not affect the amount of judgment to which the Trustee is entitled.

20.    The Trustee is entitled to pre-judgment interest at the applicable federal rate from July 21, 2009, when the bankruptcy case commenced.

21.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Frank and Beverly**

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 21

**Gyenizse in the amount of $43,953.00 CAD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

22.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Daljit Haer in the amount of $117,616.50 CAD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

23.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Ronald Ponton, Sr. and Tomika Ponton in the amount of $117,411.00 USD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

24.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 22

for the benefit of the Liquidating Trust of Debtor against **Pacifica Ventures, Inc.**

**in the amount of $85,447.00 USD**, plus pre-judgment interest from July 21,

2009, at the applicable federal judgment rate and post-judgment interest at the

federal judgment rate from the date of judgment to the date the judgment is paid in

full, *see* 28 U.S.C. § 1961.

25.     Pursuant to 11 U.S.C. § 548(a), 544, 547, 550 and 551 and RCW

19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment

for the benefit of the Liquidating Trust of Debtor against **David Perry in the**

**amount of $70,025.00 USD**, plus pre-judgment interest from July 21, 2009, at the

applicable federal judgment rate and post-judgment interest at the federal

judgment rate from the date of judgment to the date the judgment is paid in full,

*see* 28 U.S.C. § 1961.

26.     Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW

19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment

for the benefit of the Liquidating Trust of Debtor against **David and Shelly**

**Armstrong in the amount of $495,442.56 USD**, plus pre-judgment interest from

July 21, 2009, at the applicable federal judgment rate and post-judgment interest

at the federal judgment rate from the date of judgment to the date the judgment is

paid in full, *see* 28 U.S.C. § 1961.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 23

27.    Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Lazy M, LLC in the amount of $400,707.35 USD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

28.    The Trustee is entitled to reimbursement of his costs for pursuing this action.

29.    All proofs of claim filed by any of Defendants in Debtor's Bankruptcy proceedings or any claims that may hereafter arise are hereby disallowed pursuant to 11 U.S.C. § 502(d) unless and until the avoided transfers are returned to the Trustee.

30.    Trustee is awarded all applicable interest, costs and disbursements of this action against each Defendant.

/ /

/ /

/ /

/ /

/ /

31.    For the reasons discussed above, Defendant Othelia Spare is **DISMISSED with prejudice**, and Defendant Victoria Cilwa is **DISMISSED without prejudice**.

**IT IS SO ORDERED**.

The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this 12th day of May 2015.


_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 25